UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
RENATO ALBANESE,

                Petitioner,

           -against-                        ORDER ADOPTING REPORT
                                                 AND RECOMMENDATION
MICHAEL CAPRA, Superintendent,
Sing Sing Correctional Facility,                    13-CV-5152 (CS) (JCM)

                Respondent.
-----------------------------------------------------x

Seibel, J.

        Before the Court are Petitioner's objections, (Doc. 45), to the Report and Recommendation of United States Magistrate Judge Judith C. McCarthy ("R&R"), (Doc. 41), recommending that Petitioner's application for a writ of *habeas corpus* be denied. The Court assumes the parties' familiarity with the underlying proceedings, the Petition, the parties' arguments and the R&R.

        A District Court reviewing a report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The district court "may adopt those portions of the report to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 72(b)) (citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). "A party that objects to a R&R must point out the specific portions of the R&R to which [he or she] object[s]." *J.P.T. Auto., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 659 F. Supp. 2d 350, 352 (E.D.N.Y. 2009). If a party fails to object to a particular portion of a report and recommendation, further review thereof is generally

precluded. *See Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002). The court must review *de novo* any portion of the report to which a specific objection is made. *See* 28 U.S.C. § 636(b)(1)(C); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). When a party makes only conclusory or general objections, or simply reiterates the original arguments made below, a court will review the report only for clear error. *Alaimo v. Bd. of Educ.*, 650 F. Supp. 2d 289, 291 (S.D.N.Y. 2009). "Furthermore, [even] on *de novo* review, the Court generally does not consider arguments or evidence which could have been, but were not, presented to the Magistrate Judge." *United States v. Vega*, 386 F. Supp. 2d 161, 163 (W.D.N.Y. 2005).

Petitioner first objects, with respect to his incompetence claim, that the record does not support a finding that he was competent for trial and that "all available evidence point[s] in the opposite direction." (Doc. 45 at 5.) He asserts that the Magistrate Judge did not consider the entire record and that the evidence on which she did rely does not support a finding of competence. (*Id.* at 4.) As Magistrate Judge McCarthy noted, the burden was on Petitioner to demonstrate by a preponderance of the evidence that he lacked mental competence to stand trial. (R&R at 21 (citing *Medina v. California*, 505 U.S. 437 (1992).) In addition, "[o]n habeas review, a state court's conclusion of competency is entitled to a presumption of correctness." *Saunders v. Edwards*, No. 03-CV-1087, 2003 WL 22871912, at *2 (S.D.N.Y. Dec. 4, 2003) (internal quotation marks omitted), *aff'd*, 171 F. App'x 872 (2d Cir. 2005) (summary order).[1] In his objections, Petitioner highlights his "long history of mental illness" and troubling behavior, (Doc. 45 at 2), but this does not suffice to show that the trial judge's competency determination

---

[1] The Court will send Petitioner copies of any unpublished decisions cited in this Order.

was "contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). The trial court observed Petitioner throughout the proceedings, including consulting with his counsel and assisting in the preparation of his defense. (R&R at 21-22.) That Petitioner has a mental health history or occasionally misbehaved in court does not establish incompetence at the time of trial, *see Brown v. Walker*, 275 F. Supp. 2d 343, 349-50 (E.D.N.Y. 2003), or provide a basis to overturn the trial court's presumptively correct conclusion that Plaintiff was competent, *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990).

Petitioner next objects that the Magistrate Judge erred in denying his claim for ineffective assistance of counsel based on his lawyer's asserting an intoxication defense at trial and failing to follow up on Petitioner's request for a psychiatric evaluation on Petitioner's competence. (Doc. 45 at 8, 11.) "In order to establish his claim of ineffective assistance of trial counsel, [P]etitioner must demonstrate (1) that his attorney's performance 'fell below an objective standard of reasonableness' and (2) that there is a 'reasonable probability' that, but for counsel's error, 'the result of the proceeding would have been different.'" *Alston v. Griffin*, No. 12-CV-8092, 2014 WL 6663458, at *13 (S.D.N.Y. Oct. 16, 2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance," *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689), and "'counsel is strongly presumed to have . . . made all significant decisions in the exercise of reasonable professional judgment,'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). "The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that

standard." *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001). The deference accorded under § 2254, layered on top of the deference under *Strickland*, results in a doubly deferential standard of review.[2] *See Waiters*, 857 F.3d at 478 n.20 ("[T]he Supreme Court has indicated that *double deference* is appropriate when evaluating *Strickland* claims governed by § 2254(d).") (emphasis in original); *see also Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (review is "doubly deferential" because courts "take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)") (citations and internal quotation marks omitted). "[D]ecisions which fall squarely within the ambit of trial strategy . . . , if reasonably made, will not constitute a basis for an ineffective assistance claim." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987).

Petitioner argues that the Magistrate Judge incorrectly excused his lawyer's mid-trial abandonment of an intoxication defense as the result of a "series of related trial court rulings," as opposed to Petitioner's counsel's failure to prepare. (Doc. 45 at 8.) He argues that his lawyer should have foreseen that Petitioner's witness's testimony would not suffice for his intoxication defense and either secured other witnesses or instead argued lack of intent to commit a crime within the dwelling. He does not suggest how counsel should have known that the witness would backtrack on cross-examination from much of what she said on direct examination or what evidence (other than Petitioner's own testimony, which he declined to give) would have supported the intoxication defense. Further, as the R&R notes, "[i]ntoxication was a reasonable

---

[2] "Whether such heightened deference applies to both prongs of a *Strickland* claim, or only to the ineffective assistance prong, remains an open question in this Circuit." *Waiters v. Lee*, 857 F.3d 466, 478 n.20 (2d Cir. 2017).

4

avenue for success," particularly given the dearth of viable alternatives,[3] and "was supported, at least in part, by witness testimony." (R&R at 25.) Moreover, a *habeas* court may "not second-guess trial counsel's defense strategy simply because the chosen strategy has failed." *United States v. DiTommaso*, 817 F.2d 201, 215 (2d Cir. 1987); *see Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (reviewing court "may not use hindsight to second-guess [counsel's] strategy choices"); *Gluzman v. United States*, 124 F. Supp. 2d 171, 174 (S.D.N.Y. 2000) ("Among the virtually unchallengeable tactical decisions left to the judgment of trial counsel are determinations regarding the defense strategy adopted at trial.") (internal quotation marks omitted). Likewise, in the absence of a showing that the Petitioner was incompetent to stand trial, counsel's failure to pursue a competency examination cannot be deemed either professionally deficient or prejudicial. Because counsel's decisions to pursue an intoxication defense and not to pursue a competency evaluation were reasonable strategic decisions, Petitioner has not met his burden of demonstrating that his "counsel's representation was unreasonable under prevailing professional norms and that the challenged action[s] w[ere] not sound strateg[ies]." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Nor has he shown any reasonable probability that alternative strategies would have fared better.

Petitioner next objects that there was insufficient evidence to prove the charge of burglary in the second degree – specifically, that he intended to commit a crime when he entered the house in question. (Doc. 45 at 12-13.) "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have

---

[3] Lack of intent to commit a crime within the dwelling was not a promising alternative for the reasons discussed below in connection with Petitioner's sufficiency argument, and even if it were, under the deferential standard applicable to strategy choices, discussed next in the text, that counsel may have chosen a less successful strategy does not suffice to show substandard performance.

5

found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Given the trial evidence that Petitioner, in the dead of night, accessed an occupied house from an entrance away from the street, broke a pane of glass in the door to reach inside and open the lock, and after being scared away by the homeowner stole change from parked cars, it was more than rational for the jury to infer that Petitioner was not returning to an abandoned house in which he had been squatting but rather was planning to steal.[4] His arguments to the contrary rely in part on information not presented to the jury and turn on its head the relevant legal standard that the evidence be viewed in the light most favorable to the prosecution. Habeas relief is not warranted based on Petitioner's sufficiency of the evidence claim because he has not shown "that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324.

Petitioner next objects that the Magistrate Judge should not have found *sua sponte* that he had failed to exhaust his claim based on the preclusion of expert testimony on the combined effect of the alcohol and psychotropic drugs. (Doc. 45 at 16-17.) But reviewing courts can raise exhaustion arguments on their own motion absent express waiver by the respondent. *Moore v. West*, No. 03-CV-53, 2007 WL 1302426, at *8 n.15 (N.D.N.Y. May 1, 2007); *Russell v. Ricks*, No. 02-CV-940, 2006 WL 1555468, at *15 (N.D.N.Y. May 31, 2006); *King v. Mantello*, No. 98-CV-7603, 2002 WL 32100251, at *15 n.8 (E.D.N.Y. Nov. 19, 2002), *report and recommendation adopted*, 2003 WL 1873618 (E.D.N.Y. Apr. 11, 2003); *see* 28 U.S.C. §

---

[4] For one thing, had Plaintiff been using the residence in the belief it was abandoned, as he claims, (Doc. 45 at 15), he would not have locked himself out, and he would have noticed, before breaking the door glass to enter it on the night in question, that someone else had done so.

2254(b)(3). Contrary to Petitioner's argument, that Respondent addressed the issue on the merits does not amount to an express waiver. *See Santana v. Brown*, No. 09-CV-5176, 2013 WL 2641460, at *7 n.6 (S.D.N.Y. June 12, 2013) ("While not explicitly addressing the issue of exhaustion, Respondent appears to assume that Petitioner's claim was fully exhausted on his direct appeal. This is not, however, sufficient to constitute the type of 'express' waiver of exhaustion that should be held to be binding on the State."); *see also Carvajal v. Artus*, 633 F.3d 95, 106 (2d Cir. 2011) ("In light of the equivocal wording in the prosecution's brief before the district court, and recognizing that AEDPA disfavors a state waiver of exhaustion, we decline to read the prosecution's concession [concerning exhaustion] as waiver *express* within the meaning of 28 U.S.C. § 2254(b)(3).") (emphasis in the original) (citation and internal quotation marks omitted); *Lurie v. Wittner*, 228 F.3d 113, 123 (2d Cir. 2000) ("Whatever counsel was saying, we do not read it as an 'express' waiver of the exhaustion requirement."). Further, assuming that Petitioner was entitled to notice that the Court was considering an exhaustion argument and an opportunity to respond, *cf. Acosta v. Artuz*, 221 F.3d 117, 124-25 (2d Cir. 2000) (requiring notice and opportunity to be heard when court *sua sponte* raises AEDPA statute of limitations), he had it via the R&R and his opportunity to object thereto, *see Azaz v. Artus*, No. 09-CV-3857, 2011 WL 9368971, at *6 (E.D.N.Y. Nov. 2, 2011), *report and recommendation adopted*, 2012 WL 5289519 (E.D.N.Y. Oct. 19, 2012); *Smith v. Filion*, No. 04-CV-1026, 2007 WL 274780, at *9 n.9 (N.D.N.Y. Jan. 26, 2007), yet has provided no basis on which the Court could conclude that the claim – which was raised wholly in terms of evidentiary foundation, not due process – was exhausted or could now be exhausted.

Petitioner finally objects that Magistrate Judge McCarthy erred in concluding that his due process rights were not violated by the trial court's failure to give an intoxication instruction.

(R&R at 37.) While in his state appeals Petitioner "did not invoke due process, [(*see, e.g.,* Doc. 12, Ex. 4), his argument in state court] unavoidably raised the entirety of his federal claim," *Jackson v. Edwards*, 404 F.3d 612, 621 (2d Cir. 2005); *see id.* ("Where the absence of the required justification defense so clearly deprived [Petitioner] of due process, his state law claim was not merely 'somewhat similar' to that of his federal claim; it was 'virtually identical.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 366 (1995)), and this claim is therefore, as the Magistrate Judge found, sufficiently exhausted. Accordingly, this Court must first determine whether Petitioner was entitled to an intoxication charge under New York law. *See Davis v. Strack*, 270 F.3d 111, 124 (2d Cir. 2001). If so, the next question is whether the failure to give one so infected the trial as to violate due process. *Jackson*, 404 F.3d at 624. If so, the final question is whether the state court's contrary conclusion was an unreasonable application of clearly established Supreme Court law. *Id.* at 621.

Under New York law, "[a] charge on intoxication should be given if there is sufficient evidence of intoxication in the record for a reasonable person to entertain a doubt as to the element of intent on that basis." *People v. Perry*, 462 N.E.2d 143, 143 (N.Y. 1984). "Sufficient evidence of intoxication includes, 'evidence of *recent* use of intoxicants of such nature or quantity to support the inference that their ingestion was sufficient to affect defendant's ability to form the necessary criminal intent.'" *Nowicki v. Cunningham*, No. 09-CV-8476, 2011 WL 12522139, at *4 (S.D.N.Y. Mar. 30, 2011) (emphasis added) (quoting *People v. Rodriguez*, 564 N.E.2d 658, 659 (N.Y. 1990)).

> [W]hile a "relatively low threshold" exists to demonstrate entitlement to an intoxication *charge*, even a charge may not be warranted, despite the defendant's substantial use of intoxicants at the time of an alleged crime, where "the uncontradicted record evidence . . . supports the conclusion that his overall behavior on the day of the incident was purposeful."

8

*Waiters*, 857 F.3d at 480 (omission and emphasis in original) (quoting *People v. Sirico*, 952 N.E. 2d 1006, 1006 (N.Y. 2011)); *see People v. Beaty,* 999 N.E.2d 535, 537 (N.Y. 2013) (no intoxication charge warranted where evidence established purposeful conduct).

As the R&R highlights, one witness testified that "Petitioner drank a substantial amount of beer and consumed some combination of Seroquel, Valium, and Methadone over a period of more than three hours prior to the events leading to his arrest," and that when she said goodnight to Petitioner at around 11:00 p.m. he appeared "sleepy, drowsy, kind of out of it," and "his speech was 'slurry, but he was talking.'" (R&R at 35-36.) But the last known intoxicant was consumed at 11:00 p.m., approximately four hours before Petitioner's entrance into the home at approximately 3:00 a.m. (*Id.* at 3, 35-36.) Moreover, on cross-examination the witness admitted that she did not know which or how many pills he took and did not see him fall or pass out. (*Id.* at 24.) One of the arresting troopers testified "that he thought Petitioner might 'possibly' be under the influence of drugs or alcohol[,] suggest[ing] that some effect may have carried over past 4:00 a.m," (*id.* at 36), but that is not enough to suggest an inability to form the intent to commit the charged crimes, *see Waiters*, 857 F.3d at 483, in light of the ample evidence of the purposefulness of Petitioner's actions on the night in question. Those purposeful actions included: breaking the pane of door glass nearest the home's lock and using the skeleton key on the inside to gain access; trying to talk the homeowner out of calling the police; rummaging in a parked car; running from the police; and pretending to be asleep in another car to avoid detection. The question is not whether "this Court [would] have arrived at the same conclusion had it decided the issue [i]n the first instance," but whether "the trial court . . . violate[d] New York law in declining to charge the jury" on intoxication. *Moronta v. Griffen*, No. 13-CV-4081,

2014 WL 956297, at *8 (S.D.N.Y. Mar. 10, 2014), *aff'd*, 610 F. App'x 78 (2d Cir. 2015) (summary order). The Magistrate Judge did not err in concluding that the trial court did not err. *See Sirico v. N.Y. Att'y Gen.*, No. 12-CV-358, 2015 WL 3743126, at *6-7 (E.D.N.Y. June 15, 2015) (denying *habeas* relief and finding trial court was not required to give intoxication charge where Petitioner testified that "on the day of the murder, [which occurred at approximately 8:00 p.m.,] he drank approximately twenty (20) ounces of Southern Comfort between 11:30 a.m. and 5:30 p.m., in addition to taking a Xanax and that he was intoxicated at the time of the shooting . . . [but] never attributed his actions to being intoxicated"). Nor, in light of that purposefulness, can the failure to give the charge be said to have so infected the trial as to amount to a denial of due process. *See Davis*, 270 F.3d at 123-24 (citing *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)). Finally, Petitioner has not even attempted to cite to Supreme Court law contradicting the state court's decision. *See Jackson*, 404 F.3d at 621.

I have reviewed the portion of the Petition as to which no objection has been raised – specifically, the Eighth Amendment claim – and find no error, clear or otherwise.

Thus, the R&R is adopted as the decision of the Court. As the Petition makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2). The Clerk of Court is respectfully directed to close the case. **SO ORDERED.**

Dated: July 10, 2017

    White Plains, New York

*Cathy Seibel*
CATHY SEIBEL, U.S.D.J.